# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 19, 2015

## BILLY DREW MASSENGILL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Cocke County**
**No. 5630     Rex Henry Ogle, Judge**

---

**No. E2014-02431-CCA-R3-PC – Filed August 31, 2015**

---

The petitioner, Billy Drew Massengill, appeals the denial of post-conviction relief from his 2013 Cocke County Circuit Court guilty-pleaded convictions of the sale of less than 0.5 grams of cocaine, the sale and delivery of Oxymorphone, driving on a revoked license, theft of $500 or less, and failure to appear, for which he received an effective sentence of eight years. In this appeal, the petitioner contends that his guilty pleas were not knowingly and voluntarily entered and that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Jessica S. Sisk, Newport, Tennessee, for the appellant, Billy Drew Massengill.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James B. Dunn, District Attorney General; and William Brownlow Marsh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On November 9, 2013, the petitioner entered pleas of guilty in five separate cases to one count each of the sale of less than 0.5 grams of cocaine; the sale of Oxymorphone, a Schedule II controlled substance; driving on a revoked license; theft of property valued at $500 or less; and failure to appear in exchange for a total effective sentence of eight years' incarceration as a Range II offender. The transcript of the guilty plea colloquy contains the following factual summary of the offense:

If it please the [c]ourt, Case No. 3707, the [S]tate's proof would be on or about December the 8th, 2011, that members of the Cocke County Sheriff's Department, using a confidential informant, went to 508 Paintbrush Way, which is the princip[al] residence, or was the princip[al] residence of the [petitioner] at the time. This confidential informant went inside and made contact with the [petitioner] and purchased two twenty milligram Opana pills for eighty dollars. Those pills were sent to the crime lab and tested and came back as Schedule II oxymorphone. All that occurred in Cocke County.

Case No. 3706, Your Honor, the [S]tate's proof would be on or about January 26, 2012, that the Cocke County Sheriff's Department, using a confidential informant, traveled to [the petitioner's] residence to purchase some more pills. Upon arrival at the home [the petitioner] stated that he didn't have any pills but delivered to the confidential informant crack cocaine, and told him to try it and see if he liked it. That cocaine was sent off to the crime lab and came back as cocaine base[] .02 grams, which is less than half a gram. All that occurred in Cocke County.

Case No. 3384, Your Honor, the [S]tate's proof would be on or about December 13th, 2011, that the [petitioner] took a hundred and twenty dollars cash in twenty dollar bills from a confidential informant in exchange for two thirty milligram Opana pills, prescription pills. [The petitioner] took the money from the informant, walked in the house and wouldn't return the money [] nor provide the pills. He's charged with theft. And all that occurred in Cocke County.

Case No. 3481, Your Honor, the [S]tate's proof would be on or about October 1st, 2011, that the [petitioner] was stopped after being clocked going forty-one miles an hour in a twenty mile an hour zone, and they checked his license and it showed to be suspended for failure to satisfy a citation. All that occurred in Cocke County.

And finally, 4510, Your Honor, the [S]tate's proof would be on or about March the 25th, 2013, the [petitioner]

was to be in court on the sale and delivery charges that he just pled to, and he failed to appear. All that occurred in Cocke County.

The guilty plea hearing transcript evinces that the trial court conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy with the petitioner. In the colloquy, the trial judge informed the petitioner of the nature and sentencing range of each charge, and the petitioner indicated his understanding of the potential sentencing. The petitioner also confirmed that he had consulted with trial counsel about his decision to plead guilty and that he freely and voluntarily made the decision to accept the plea agreement.

Following the entry of the plea agreement, the petitioner filed a timely petition for post-conviction relief, alleging that he was deprived of the effective assistance of counsel and that his guilty pleas were not knowingly and voluntarily made. On November 10, 2014, the post-conviction court conducted an evidentiary hearing.

At the evidentiary hearing, the petitioner conceded that, at the plea submission hearing, he had acknowledged an understanding of the range of penalties for the charges against him and had agreed that he had voluntarily decided to accept the plea agreement. In response to the question of why his pleas were involuntary, the petitioner responded that, at the time he entered his plea, he was "asking counsel to get the evidence and go over the evidence with [him] because the drug cases" were inaccurate. The petitioner testified that he only met with trial counsel on one occasion and that counsel never reviewed his discovery materials with him. When asked on cross-examination why he had failed to voice "any other reason" why he had pleaded guilty, the petitioner responded that he "just wanted to get it over with."

Trial counsel testified that he met with the petitioner "two or three times" and that they spoke on the telephone "more than that." Trial counsel recalled meeting with the petitioner "[a]t least twice" during court appearances. Trial counsel stated that he had reviewed the discovery materials with the petitioner, recalling a specific incident when he and the petitioner were reviewing a puzzling exhibit. Trial counsel acknowledged that he was unable to listen to the audio recordings of the drug transactions with the petitioner because trial counsel "had no method to be able to do that." Trial counsel did, however, discuss the recordings with the petitioner and the way in which the State would likely use the recordings against him. Trial counsel testified that the petitioner never provided him with the names of any potential witnesses. Trial counsel recalled that the petitioner's prior counsel provided him with the discovery materials in her possession, and trial counsel stated that he filed his own discovery motions as well.

- 3 -

With respect to sentencing, trial counsel testified that he reviewed the State's notice of enhancement with the petitioner to ensure that the notice was accurate. In addition, trial counsel instructed the petitioner that his guilty pleas would result in "rang[ing] him up" if he were to be convicted of any future crimes. Trial counsel testified that he explained to the petitioner that the drug convictions were Class C felonies and that the failure to appear conviction was a Class E felony, and trial counsel stated that he believed the petitioner understood. Trial counsel acknowledged that the State's original offer was a sentence of 12 years at 45 percent service and that he had successfully negotiated a sentence of eight years at 35 percent service.

In the post-conviction court's order denying post-conviction relief, the court found that the petitioner, in entering into the plea agreement, "understood the terms" and "freely, knowingly, and voluntarily pled guilty." The court further found that the petitioner's convictions were "not based on an unlawfully induced guilty plea" and were not "entered without understanding the nature and consequences of the plea." With respect to trial counsel's representation of the petitioner, the post-conviction court found that trial counsel "adequately and effectively represented [p]etitioner throughout the proceedings," that trial counsel "met with [p]etitioner, discussed the facts of the cases, possible defenses, advised [p]etitioner of his constitutional rights, and the range of penalties that he was facing." The post-conviction court concluded that the petitioner "was not denied the effective assistance of counsel."

In this appeal, the petitioner reiterates his claims of ineffective assistance of counsel and involuntary guilty pleas, claiming that trial counsel performed deficiently by failing to review all discovery materials with him and that he simply did not understand the nature and consequences of his plea agreement, thus rendering his plea unknowing and involuntary. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Both claims of ineffective assistance of counsel and involuntary guilty plea are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State*

*v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court. The record of the guilty-plea submission hearing and the implicitly accredited testimony of the petitioner's trial counsel evince the petitioner's understanding of the proceedings and his willingness to enter into the plea agreement. Moreover, the record demonstrates that trial counsel rendered effective assistance in representing the petitioner.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE